INCORPORATED CITY OF HUMBOLDT et al., appellants, v. GUY
KNIGHT et ux., appellees.

No. 50919.

(Reported in 120 N.W.2d 457)

MARCH 12, 1963.

REHEARING DENIED MAY 7, 1963.

John E. Miller, of Humboldt, for appellants.

Linnan, Lynch & Straub, of Algona, and B. C. Berge, of Garner, for appellees.

LARSON, J.—This is an action for declaratory judgment brought by the City of Humboldt asking that the court declare a certain written agreement, duly executed and recorded in Humboldt County, between one John Johnston and the Town of Humboldt, set forth as Exhibit A, null, void and unenforceable. Its principal contention is that the contract entered into July 5, 1904, was an ultra vires act on the part of the town and therefore void. The trial court rejected that contention and held defendants, successors in title to Johnston, were not subject to a recent ordinance of the city setting water rates for all users within its corporate limits, but were entitled to receive water free from the city indefinitely. We cannot agree.

While appellants set forth seven propositions relied upon for reversal, we need consider only the first, which is that "The court erred in concluding that the agreement (Exhibit A) was not an ultra vires act by the town."

In substance, Exhibit A gave to the town, now the City of Humboldt, the perpetual use of a portion of his farm, designated as Government Lot 1, located within the town limits for a spring-water supply, a water tower site, and for laying water transmission pipes, and gave to Johnston, his heirs, representatives or assigns, such an amount of water free as was reasonably necessary for the stock kept on the farm, for household and for other

farm purposes. Until recently this agreement was honored by all parties, although in 1933 the spring went dry, the water tank was torn down in 1960, and Lot 1 had been divided and the defendants Guy Knight and Gladys Knight own only the part on which the buildings were situated. The portion subject to the servitude is now owned by another.

While there is some contention defendants failed to show a proper transfer of the right to water from Johnston as required in Exhibit A, we need not concern ourselves with that question here. The nub of this controversy is whether under the law as it existed at the time of the agreement, the town was permitted to enter into such a contract. A close examination of the statutes as they then existed will perhaps disclose the extent of the power granted cities and towns to furnish and sell water to their inhabitants and others.

I. It is well settled in this jurisdiction that municipalities have only those powers granted them by the legislature or which arise from fair implication and those necessary to carry out powers expressly or impliedly conferred. Cedar Rapids Com. Sch. Dist. v. City, 252 Iowa 205, 208, 106 N.W.2d 655; City of Des Moines v. Reiter, 251 Iowa 1206, 1210, 102 N.W.2d 363. Such grants are strictly construed against the authority claimed. Gritton v. City of Des Moines, 247 Iowa 326, 331, 73 N.W.2d 813; Mason City v. Zerble, 250 Iowa 102, 108, 93 N.W.2d 94. In Van Eaton v. Town of Sidney, 211 Iowa 986, 989, 231 N.W. 475, 476, 71 A. L. R. 820, this court, in considering the powers granted municipalities by the legislature, said: "A municipality is wholly a creature of the legislature, and possesses only such powers as are conferred upon it by the legislature: that is, (1) such powers as are granted in express words; or (2) those necessarily or fairly implied in or incident to the powers expressly conferred; or (3) those necessarily essential to the identical objects and purposes of the corporation, as by statute provided, and not those which are simply convenient. 1 Dillon on Municipal Corporations (5th Ed.), section 237 [and other citations]."

In Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 731, 277 N.W. 291, 299, we again considered this authority, and after quoting the above from the Van Eaton case, said: "But

a different rule is applied when dealing with the exercise or carrying into effect of powers expressly or plainly granted." This rule taken from 1 Dillon on Municipal Corporations, Fifth Ed., section 239, page 453, was set out as follows: " 'The rule of strict construction does not apply to the mode adopted by the municipality to carry into effect powers expressly or plainly granted, *where the mode is not limited or prescribed by the legislature, and is left to the discretion of the municipal authorities.*' " (Emphasis supplied.) These rules, we take it, are, as Judge Dillon said, "indisputably settled."

In 1 McQuillin, Municipal Corporations, Second Ed., page 925, also quoted in the Keokuk Waterworks case on page 732, it is stated: " 'When the authority to exercise the power appears, wide latitude is allowed in its exercise, and, unless some abuse of power or a violation of organic or fundamental right results, it will be upheld. A municipal corporation, when exerting its functions for the general good, is not to be shorn of its power *by mere implication*. The intention to restrict the exercise of its powers must be manifest by words so clear as not to admit of two different or inconsistent meanings.' " (Emphasis supplied.)

In Lyon v. Civil Service Commission, 203 Iowa 1203, 1209, 212 N.W. 579, 581, we stated the rule thusly: "It is elementary that, unless expressly or impliedly restrained by statute, a municipal corporation may, in its discretion, determine for itself the means and method of exercising the powers conferred thereon." It was under this rule a contract to furnish sewage disposal was upheld in the case of Des Moines v. West Des Moines, 239 Iowa 1, 30 N.W.2d 500, and the furnishing of electrical power was upheld in the case of Incorporated Town of Sibley v. Ocheyedan Elec. Co., 194 Iowa 950, 187 N.W. 560. In each case service was provided by contract to outside users rather than to residents within the corporate limits, and the requirement that rates be fixed by ordinance was not applied.

Two vital questions present themselves in the case at bar. Was the Town of Humboldt duly authorized by the legislature to furnish water to its inhabitants and, if so, was its method of sale restricted by statutory provisions sufficiently clear to exclude sales by contract to the residents therein? It is appellants' posi-

tion that the Town of Humboldt had no authority to furnish Johnston or his assigns water under the purported contract, that it was authorized to sell water to its residents only at rents or rates fixed by ordinance, and its power to sell otherwise was clearly and specifically denied the municipality. We are inclined to agree.

An examination of the legislative authority delegated to cities and towns for the establishment and operation of waterworks within its corporate limits in 1904 is necessary. In Title V, chapter 4, of the Supplement to Code of Iowa, 1902, section 720 grants municipal corporations the "power to purchase, establish, erect, maintain and operate * * * waterworks, * * * with all the necessary reservoirs, mains, filters, streams, trenches, pipes * * * and lease or sell the same." This section, of course, delegates power to establish and operate a waterworks in the Town of Humboldt and, had it stopped there, appellees' contention that in its proprietary capacity the town could sell, barter or contract for this service would perhaps be sound. Keokuk Waterworks Co. v. Keokuk, supra; City of Des Moines v. Horrabin, 204 Iowa 683, 215 N.W. 967; Incorporated Town of Sibley v. Ocheyedan Elec. Co. and Des Moines v. West Des Moines, both supra; 37 Am. Jur., Municipal Corporations, section 66, page 679. However, section 724 goes on to provide: "They shall have power, when operating such works or plants, to assess from time to time, in such manner as they shall deem equitable, *upon each tenement or other place supplied with water, * * * reasonable rents or rates fixed by ordinance,* and to levy a tax, as hereafter provided, to pay or aid in paying the expenses of running, operating, renewing, extending and repairing such works or plants owned and operated by such city or town * * *." (Emphasis supplied.)

In section 725 it is provided: "They shall have power * * * to regulate and fix the rent or rate for water, * * *; to regulate and fix the charges for water meters, * * * or other device or means necessary for determining the consumption of water * * *, and these powers shall not be abridged by ordinance, resolution or contract."

We cannot escape the conclusion from these sections that

the legislature specifically limited the method of sale and prescribed in no uncertain terms how the rates should be fixed, i.e. by ordinance, and specifically provided that power of succeeding councils to fix rates could not be abridged by ordinance, resolution or contract. It, therefore, appears to us it matters not whether this function be classified as proprietary or governmental, the legislature clearly restrained the means and method of exercising the powers conferred, and that in attempting to contract or barter water service to Johnston the Humboldt town council exceeded its powers and the contract was ultra vires.

It is clear beyond question that when this contract, Exhibit A, was executed, the town was authorized to engage in the waterworks business, and that it could sell water to its inhabitants. However, the limitation that it should do so by fixing reasonable rates by ordinance is such a definite and clear restriction upon the town's power to sell by any other method that it permits no dispute. Section 724 of the Code Supplement, 1902, grants power to assess places supplied with water reasonable rents or rates "fixed by ordinance" and section 725 provides "these powers shall not be abridged by ordinance, resolution or contract." It is indeed difficult to escape the conclusion that this power was exceeded by a contract to furnish appellees water free or that they were subject to the rates fixed by ordinance. We are satisfied the act of the council in executing the agreement, Exhibit A, was an ultra vires act and that the agreement was unenforceable and void.

II.  It is conceded by the parties that fixing rates for water service is a legislative process and that if such was the requirement as to the sale of water, then one council could not bind its successor by establishing rates effective beyond the term of the councilmen.

It is stated in 37 Am. Jur., Municipal Corporations, section 66, page 679: "* * * where the contract * * * involves a matter of discretion to be exercised by the council unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own term, no power of the council so to do exists, since the power conferred upon municipal councils to exercise legislative or governmental func-

tions is conferred to be exercised as often as may be found needful or politic, and the council presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transmit them unimpaired to their successors."

Here, under the authority of section 397.27, Code of Iowa, 1958, now 1962, the council of the City of Humboldt did enact Ordinance No. 323, referred to herein as Exhibit B1. It was entitled "An ordinance to amend Ordinance No. 201 and repealing Ordinance No. 322 relating to the establishment of rates for use of water from city water systems." It provided after January 1, 1962, "That each and every person, firm or corporation using water from the city water system as a patron thereof, shall pay for all water used at the following rates:" (rates omitted) and that "The amount of water charged to each person shall be the amount registered by meter except as otherwise provided by Ordinance No. 105 [its provisions not shown]. The minimum amount to be paid by each patron shall be $1.00 per month."

In view of our conclusion that the contract, Exhibit A, was ultra vires and unenforceable, it follows the appellees must pay for water used under the rates established by Ordinance No. 323 the same as other residents within the corporate limits of the City of Humboldt.

III. Appellees argue the contract, Exhibit A, was entered in good faith and the contemplated consideration was furnished, that the contract was an exercise of the inherent powers of the corporation, and was a business, not a legislative, matter. The short answer to these contentions is that in the statutes authorizing the town to operate a waterworks and sell water, it is clear the sale of water was restricted to sales to tenements under rates fixed by ordinance and, in view of the limitation on the manner of charging for water service within its corporate limits, no other power can be inferred. Dotson v. City of Ames, 251 Iowa 467, 470, 101 N.W.2d 711, 713; Van Eaton v. Town of Sidney and Keokuk Waterworks Co. v. Keokuk, both supra.

Appellants cite two cases which they contend sustain their

position that such contract is invalid, Des Moines v. West Des Moines, supra, 239 Iowa 1, 30 N.W.2d 500, and Incorporated Town of Sibley v. Ocheyedan Elec. Co., supra, 194 Iowa 950, 187 N.W. 560. As previously pointed out in each of these cases, the contracts were held valid because they were within the scope of power granted the municipality to engage in proprietary capacity without direction as to how its services were to be sold. The mode of sales made outside the corporate limits was not limited in the statute then applicable. Neither of those cases involved the statutes we are concerned with here, and neither involved the sale of a service which the legislature restricted to council-established rates by ordinance.

■ IV. Appellees contend that due to the many years these parties exercised the respective rights granted in the contract, Exhibit A, the municipal corporation is estopped to repudiate it now. The difficulty with that argument is that municipal corporations cannot be bound to an ultra vires contract by estoppel. 38 Am. Jur., Municipal Corporations, section 522. It is therein stated at page 202: "As a general rule, the doctrine of estoppel cannot be applied as against a municipal corporation to validate a contract which it has no power to make, or which it is authorized to make only under prescribed conditions, within prescribed limitations, or in a prescribed mode or manner, although the corporation has accepted the benefits thereof and the other party has fully performed his part of the agreement, or has expended large sums in preparation for performance. A reason frequently assigned for this rule is that to apply the doctrine of estoppel against a municipality in such case would be to enable it to do indirectly what it cannot do directly." Also see First National Bank v. City of Emmetsburg, 157 Iowa 555, 138 N.W. 451, L. R. A. 1915A 982, and 10 Drake Law Review, page 69. In the latter article the author correctly states: "But if the power to contract does not exist there simply can be no estoppel and it is immaterial whether the governmental unit was acting in a governmental or business capacity."

It is our conclusion appellees must comply with the requirements of Ordinance No. 323 and pay the rates for water set therein, and that the contract to furnish them free water is unen-

forceable. The judgment of the trial court, therefore, must be reversed.—Reversed.

All JUSTICES concur except HAYS, J., not sitting.